Robert Stacey for the United States. I'd like to save two minutes of my time for rebuttal, if I may. As the Court is well aware, this case presents a question of whether a district court erred in departing from the Guidelines. The government's brief identifies several issues. However, in the interest of time, I'd like to concentrate on two in particular that the government feels both fit together factually and form the heart of the government's argument. Specifically, those issues are, first, whether a district court has adequately considered the possibility of prison discipline in drafting Guideline 2P1.2, and second, whether or not the defendant met his burden of showing that his conduct differed from other similarly situated defendants. With respect to the first issue, Guideline 2P1.2, under both 18 U.S.C. 3553B and the Coon decision, before a district court is permitted to depart, it must identify a factor that the sentencing commission did not adequately account for in drafting the Guidelines. This is a question of law that this Court reviews de novo and that this Court reviewed de novo even before the PROTECT Act. In two cases, one from the Supreme Court and one from this Court that presented a similar situation, downward departures were overturned on the basis that the sentencing commission had adequately considered the ground in question. The cases I'm referring to, which were cited in the government's brief, are, first, the Coon case itself, and, second, the Martinez-Ramos case from this Court. In the Coon case, the defendants were police officers. They were convicted under 18 U.S.C. 242 for violating the defendant's civil rights under color of law. They were sentenced under Guideline 2H1.4, which is the guideline for civil rights violations, and the district court departed because it found that the defendants faced certain career-related consequences, namely the loss of their jobs and possibly being barred from further work in the law enforcement field. The Supreme Court reversed that departure, finding that the career-related consequences that the district court identified, in the Supreme Court's own words, it is to be expected that those officials would suffer those sort of career-related consequences for violating Section 242, and, therefore, that the — that those consequences were adequately considered by the commission in formulating 2H1.4, because, in fact, they were so commonplace. A similar analysis obtained in this Court's decision in Martinez-Ramos. In the Martinez-Ramos case, the defendant was an illegal alien who was convicted under 8 U.S.C. 1326 for illegally being in the country. The defendant was sentenced under 2L1.2, which is the guideline relating to those offenses, and the district court departed because the defendant was a deportable alien and, therefore, would not be eligible for early release or community confinement, which BOP guidelines permit to citizens. This Court reversed the departure using a similar analysis to that obtained in the Kuhn case. Kennedy. Let me cut to that a little bit and ask you this. Suppose the Sentencing Commission did consider the fact that a prisoner who commits a crime in prison will receive some administrative discipline, but that normally administrative discipline means, say, three months in solitary, just to pick an example. And in the case of the individual, they said, all right, you have a 20-year sentence already, your entire 20 years will be served in solitary. Is that something the district court could not consider? Well, Your Honor, I think that goes to the second point I was going to raise here. But I think the question of whether or not that discipline falls outside of sort of the, if I may use the term, the heartland of prison discipline cases that the Commission considered in 2L1.2, that's something that this Court's cases have stated is the defendant's burden to prove, that if that discipline is not excessive. All of those things, that even if they considered it, that doesn't end the inquiry. Well, I guess the question is what it means to adequately consider a ground. I would say that in this case, what the Commission adequately considered was the, again, using the heartland analysis, the typical range of cases, the typical prison discipline cases. There are two questions. The question one that you seem to be addressing first was, well, there just is no power in the district court in any case to go outside of the heartland of this particular guideline, because the heartland covers anything the prison authorities choose to do. I think you just said, Judge Reinhart, no, I don't really support that. They could do something that would let the district court go outside the guideline, and then the question is, is this one of those cases? But it ain't that you never can do it. Well, I'm sorry. I may have misspoken. I guess what I'm trying to say is that I believe, and the Government believes, that the Commission did in fact adequately consider normal prison disciplinary procedures in drafting 2P1.2. Okay. So now you're at step two. Was this person subjected to normal disciplinary procedure, or could the district court decide it was indeed abnormal? And your answer to that is going to be, I think? I'll answer the question for you, Your Honor. I don't believe the district court could so decide in this case because the defendant failed to put on any evidence to show that he was submitted to any abnormal disciplinary procedures. The defendant's, at least by my reading of the record, and the defendant's sole evidence at sentencing with respect to his discipline consisted of the speculation of his counsel that she had reviewed the cases that passed through her office and had not found that the Government had filed many contraband in prison cases, which to the Government doesn't address the proper question. The question is not whether the question, as this Court has pointed out in its decisions defining the heartland, is not whether or not cases were filed, but of the cases that actually were filed and in which defendants actually were sentenced. That is the ground you need to compare on. So counsel's speculation on that ground was strictly irrelevant. Other than that, and defendant's declaration regarding what he was told about the future prison, the possibility of prison discipline in his case, which, again, the Government doesn't address. I guess what you're saying is that in order to show that the detention was way beyond what there normally is in this case, the defendant for and requesting a departure should really conduct extensive discovery of what goes on in the prisons in the United States. And that's what we need to do for a normal sentencing procedure. I don't believe extensive discovery would be necessary, Your Honor. I mean, I think simply a showing, I think a showing from the Terminal Island officials themselves would itself be at least be emblematic. And the district court could certainly take the practice at, in this case, the Terminal Island prison as an example of what goes on. I don't think a nationwide survey is necessarily necessary. We say all the time, though, that we give deference and we are told by statute to give deference to what district courts do because they're on the firing line and they know. They don't need extensive evidence necessarily. Let's say Judge Cooper has sentenced a hundred of these cases, just for example, or the district court has and they all – and the district court just knows what usually is done in these cases. Are you saying that can't be a consideration? Because we always say, well, they know what's weird and what isn't weird. They don't have to be told in the case. I'm running into my rebuttal time, but I would like to answer Your Honor's question. I'm just happy to let you go. The – I guess, with two respects. One, with respect to giving deference to the district court, as the government brought up in its brief, I believe under the PROTECT Act that's no longer the case. It's obviously a separate issue. But assuming that the standard is still the deferential standard that Your Honor addressed, I believe in this case in particular, the district court admitted that she didn't in fact know. There's a cite in the record that the government cites to the district court stated that she in fact did not know whether or not this defendant's punishment was any greater or lesser than the punishments that other similarly situated defendants received. And that while perhaps – That's answering a different question from the one I asked, of course. I'm sorry, Your Honor. What I asked you was, you were suggesting that they had to put on evidence,  Not at all, Your Honor. I guess Not at all what? You're not suggesting that? Well, I think this Court's – I think this Court's decision states the defendant has to put on evidence. Okay. I think that the district court can, I guess in a manner similar to taking judicial notice of facts, the district court can in fact rely on its – if it has expertise in a certain area, the district court can rely on that. But in this case, the district court admitted that there wasn't a such reliance. Okay. Again, I didn't want to run to my rebuttal. So I'll submit now and wait for my colleague's argument. Thank you, counsel. Thank you, Your Honor. May it please the Court. Jeff Rutherford with the Federal Public Defender's Office on behalf of Mr. Exson. I want to address first the issue of whether or not the ground upon which Judge Cooper departed is a permissible ground for departure, and we believe that it is. Focusing on the two cases that the government cites, I believe neither of those cases prohibited Judge Cooper from departing downward on the basis of excessive administrative punishment. I think that Judge Reinhart hit the nail on the head with respect to the difference between both the Coon case and the Martinez-Ramos case and the case that we have before the Court today. And that is the excessiveness of the punishment that's imposed. Well, how do we know it's excessive? Well, Your Honor, I think that, again, with respect to excessive, that would go to whether or not my – basically what was going to be my second point, which is whether or not the district court abused her discretion in departing downward. But when a court of appeals looks at a judge's decision, like Judge Cooper's, to depart downward, the court of appeals presumes that Judge Cooper brings to that decision a certain level of experience. Well, here's the problem with that. I mean, it's just flat out the problem. And opposing counsel mentioned in his last remarks, she says, I don't have a clue about whether the discipline imposed here is more severe than that's normally imposed. That's what she said. I don't have a clue. Now, I do give her deference. She doesn't know. She has no idea. Now, tell me how she can depart after saying, I have no idea. Well, my best guess, Your Honor, is the following. I read that statement. Well, we have what we have in terms of the record. I read that statement as her saying that she didn't know what discipline had been exacted upon the panoply of inmates that had been presented in the government's declaration, that there were some 40 people who had been caught with heroin. It was unknown how many of those had actually been brought to federal court. I think actually looking at government's excerpt of record at page, I believe it's at 88, we can presume that any of the cases in which the evidence was not released to the FBI was a case that was not then brought to federal court for prosecution. It's not a question of who gets prosecuted. The problem I'm having, she says she has two reasons, and I don't think she deviates from the principle that she has two reasons for doing this. One is he might have been told that he would not have been, he was only going to be subjected to administrative proceedings. I don't know what the relevance of that is to a departure. That seems totally irrelevant. It's probably incorrect also, but it seems irrelevant. And her second reason, it looks like he had substantial punishment from the prison, but I don't know if that's what everybody else gets. That's what she said. Your Honor, the way that I interpreted, maybe I just wasn't clear in my earlier comment, the way that I interpreted what Judge Cooper was saying was that Judge Cooper might not have known what happens to all inmates caught with contraband, but we have to presume that Judge Cooper knows the administrative sanctions brought upon every inmate actually brought to federal court for prosecution. For anybody that would appear in front of Judge Cooper on a prison contraband crime, we have to presume that Judge Cooper would understand what prior administrative sanction there was. She might not know what happens to every inmate who is administratively sanctioned, but I believe, especially if we give her the substantial deference I believe she's due, we have to believe that she understands, at least for the defendants that actually come to federal court, what administrative sanction was brought upon. She doesn't say that, though, does she? No, and, Your Honor, I have to admit that. She just says it looks like it's kind of, it looks like it's substantial, and that lends credence that maybe the administrative people thought it was sufficient, so I'm prepared to find that it's a double punishment and that's a legitimate basis for downward departure. So she almost seems to say, as well, if the administrators thought they gave her, they gave them a sufficient administrative penalty, then I'm prepared to find there's a double punishment, which, of course, they would say to you, there's always a double punishment. I mean, of course there's a double punishment. That's, the commission knew that. But the question is, if she doesn't have any idea, either through osmosis or through evidence or anything else, about whether this is more severe, how do we say it's so unique that it, these were the unique cases, right, it's so unique it comes out of the heartland of that guideline? Your Honor, I think that we have to begin with, I think we still have to look at the case through the lens of the fact that she brings some experience with her to that decision. She made, I understand that she admitted not knowing what happened to all, but I. Kennedy, but if she hadn't talked so much, you would have been able to make that argument. See, it's a great argument if she hadn't said what she said. That's the trouble. I understand. But I think it can be interpreted two ways, and I think in fairness to Judge Cooper it needs to be interpreted as she might not have known what happened to all inmates at Terminal Island caught with contraband, but she has a feel, clearly, for what the punishment was for those inmates who were then referred to the United States Attorney's Office for prosecution. She never said that. I know you're right. She never said anything like that. But I think one of the reasons, one of the, one of the, I guess, I think that what's part of the substantial deference that this Court gives to the district courts, part of that is that she doesn't need to speak to every experience, or actually she doesn't need to refer to everything in her experience that informs that decision. I think if this were on de novo review, perhaps it would be different. But giving her the deference that we need. And is it not perhaps on de novo review now? I think it is perhaps on de novo review. Now, I don't think it ought to be on de novo review. If the Court is inclined to think so, I'd certainly ask to submit some supplemental briefing on it, because we didn't. It was raised in the government's reply brief. But giving her substantial deference, I think, means in this case understanding that there was something in her experience that she read, that she brought to the decision that this punishment was excessive. I think that while the government did put forward a declaration from the special security investigator from Terminal Island that this was not an unusual penalty, the fact remains that given that he spent so much time waiting for his prosecution, all of those administrative penalties played themselves out. And the judge had to do that. Kennedy. Well, he said it wasn't an unusual administrative penalty. Did that refer to the actual penalty or the penalty plus the waiting period? I read that to refer to the actual penalty, Your Honor. If the penalty, if the initial penalty had played itself out, and at the end of that initial 45 days, Mr. Exum had been moved to MDC and prosecuted in Federal court, he would have suffered a very different penalty than the penalty that he did suffer by waiting for all of those to play themselves out. I think the government is actually incorrect when it states in its brief that it didn't matter whether he was indicted the first day, the first week, the first month of the first year. When he was removed from Terminal Island, he might not have had a change in his, the loss of good time credits, but he certainly would have had a change in the administrative segregation that he suffered. And while I concede that the statement said it was six months in segregation incorrect, it was nonetheless four and a half months of administrative segregation, then moving to a higher security institution, that being Lompoc, and then after a year and a half at Lompoc, finally being moved to MDC for prosecution. If it had happened within a day, within a week, or within a month, the penalty that Mr. Exum suffered would have been different. It just wouldn't have been the same. Is removal to Lompoc considered a penalty also? Lompoc, Your Honor, is a United States penitentiary. I know what it is. I said this is changing you to another prison because you now have a different category, point category, because of the offense you did commit. Is that, would you treat that as a penalty? Yes, Your Honor. It's actually set forth. That doesn't happen normally, I take it. It's set forth as a sanction, and that would be in the CFRs that are attached to the government's opening brief. Okay. And I want to point out for the Court also that there were a number of sanctions that were available here. Mr. Exum received four of the five sanctions that he could have received, although there were seven sanctions available. Two of them simply didn't apply to him, which is restitution and some kind of impact on parole because he wasn't eligible for parole. So he received virtually the maximum penalty that he could have received under the CFR sanctioning authority, and I think that the Court had to have understood that at the time when she determined that the penalty was excessive. Thank you.  I submit. Thank you, counsel. In my brief rebuttal time, I'd like to address two points that the Court brought up during opposing counsel's argument. First, with the question of whether or not this Court can rely on the Court's expertise, obviously with the PROTECT Act, as Your Honor pointed out, that's an open question at this point. But assuming that a deferential standard is still in place, I don't think that the Court should use reliance on the district court. I don't think reliance on the district court's expertise can be used to write out entirely this Court's decisions in the Littman and the Anders case and in other cases in which this Court has stated that a defendant, in fact, bears the burden of proving he is entitled to a departure. I think the Court's expertise, as I stated in my opening argument, is something that's akin to judicial notice, where the Court can take notice of certain facts that come within its expertise, but that if the Court is relying on that expertise to make a departure, that should be stated in the statement of reasons. And Judge Fernandez, as you pointed out, that simply wasn't done here. And to very briefly, with respect to the waiting period of the delay, as the Martinez case points out, delay is only a ground for a downward departure if it results in some sort of unfair or undue prejudice to the defendant here. Even in a perfect world, I don't think that four months from the time of a crime that's committed from the time of indictment doesn't seem to the government that four months arrives at the level of unfairness necessary to make that delay relevant to the question of whether or not the defendant is guilty. Kennedy, it appears here was two and a half years between the time of the offense and the time of filing the indictment. Well, certainly. But, Your Honor, the – I guess the time – The four months had to do with the period he was in solitary. Correct. I believe the point that counsel brought up was that if the government had brought the case earlier, it could have cut that solitary time short. Once that solitary time ran, there was no prejudice to the defendant whether the prosecution came on the day after the solitary time was over or a year or two years later. Why would that have cut it short? I thought that the reason he had all that time was because he was waiting to go to the next – to Lompoc. I mean, it took time to get the transfer arranged, and that's why he was in. That's correct. It wasn't because of the indictment, was it? No, Your Honor. It was because of the waiting to disperse. But even had he been indicted, would that not have cut it short? Well, I presume if he would have been indicted sooner, he would have been transferred from Terminal Island to the holding facility in Los Angeles. He would not have been transferred immediately to Lompoc to await trial. If there are no further questions from the Court, the Government will submit. I have one other question. Do you care which standard of review we apply in this case? Do you have a suggestion as to what we ought to do? I guess whether or not the Government cares as to what standard the Court applies depends on whether or not – if the Court feels that the district court abused her discretion, this case – No, no, but you can't have that answered before you – No, there are two reasons. I mean, the reason I ask that question is that I think there probably – I'm not certain another member of this panel may have a better idea – I think probably the Protect Act issue is going to be decided in another case rather than this. Sometimes parties don't raise issues and we proceed on the basis of the issues they raise. The – if you're asking us to apply the Protect Act to standards of this case, we may have to wait until the other cases are decided. If you're not asking us to apply it and you're saying you can decide this under the old abuse of discretion standards, then whatever the law is, we might do what you suggest. And I was asking whether – because since you raised it in the reply brief, I was asking whether you had a position as of today as to what you urge the Court to do as far as applying a standard of review. I would certainly urge the Court to apply the de novo standard. I believe particularly in this case, this is not a case where even in the pre-Protect Act standard where concerns were raised with the district court, as you brought This was not a case in which there was any witness testimony below the record that this Court would be – the evidence this Court would be using to make a de novo review would be exactly the same evidence in terms of declarations and the arguments of counsel in the transcript that were made before the district court. I think this case is particularly susceptible to de novo review. So in this case, I would, in fact, urge the Court, if it finds it applicable, to apply the de novo standard in the Protect Act. It may be that once you're doing de novo review in cases in which the district court assumed you were going to review under an abuse of discretion, you might want to give the district court another chance to explain its reasons more fully or clearly. That would seem to be – we're very concerned about fairness to district judges and now Congress and the courts. So it might be that that would be the fair thing to do if the standard were changed. I guess, Your Honor, I would hope that the district courts would apply the same rigorousness and level of explanation, regardless of whether this is abuse of discretion or de novo. Well, I wouldn't feel they had to explain as much in an abuse of discretion standard that we might be much more willing to, in abuse of discretion, to do the kind of thing Judge Fernandez said, to assume they knew what they were doing and had experience, whereas under a de novo standard, they may feel they have to say that and explain it and lay it all out for us. That's what abuse of discretion means. We cut them a lot of slack. De novo means we don't cut them any slack, doesn't it? Your Honor, this question of standards is exactly correct. I'm not sure of the question. I want to make sure of the question the Court is asking. Judge Reinhart, you're stating that if this case were to be resolved under de novo review, you feel that it might be fair to the district court to permit, I guess, further factual findings? Well, in general, it would seem to me. I was asking, you know, as a thought, not a determination, but as a thought, that in general, where judges, district judges have made decisions that they feel are going to be reviewed and feel properly were going to be reviewed under an abuse of discretion standard, and then we change the rules after they've made the decision that the fair thing to do in those cases might be to remand them so that they can make a determination knowing that it will be a different type of review and make different types of findings. I guess I don't see that in this case, Your Honor, simply because under de novo standard, even if the district court engaged in a lengthy explanation of its reasons for making the decision, this Court's review would still be de novo. The district court's reasons would no longer be. Unlike abuse of discretion where you would look at the district court's reasons to see whether or not it abuses discretion, your review would be de novo. Suppose the district court said what Counsel wants us to read this statement by her to me. Suppose the district court really means, well, you know, in my long experience in handling these kinds of cases, I have never seen one as extensive as this. But, of course, I don't know what's done all the time, but that's just my thing. I take judicial notice of the fact that I've never seen such a case before. Now, district court says that, let's say, and we do de novo review. How do we de novo review that? I guess to the extent, Your Honor, that that would add some facts to the record that you would not have before, that might add to your de novo review. But failing a situation like that, allowing the district court to further explain, again, in that de novo review would essentially make the district court explanation move, wouldn't change anything. Okay. Thank you, Counsel. Thank you, Your Honor. The case is arguably submitted. The Court will adjourn.
judges: Reinhardt, Fernandez, Rawlinson